IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02599-KLM

TORREY V. BANKS,

     Plaintiff,

v.

CAPTAIN KATZENMEYER,
STEPHANIE ENGLAR, FCF Mental Health Counselor,
JERRI SCOLLARD, Acting FCF Mental Health Supervisor,
C. SOARES, Assistant Warden at CSP,
CAPTAIN ARGUELLO, CSP Mail Room Supervisor,
SGT. CROSLEY,
C/O MALEBRANCHE, and
CAPTAIN QUATTLEBAUM,

     Defendants.

_____

## ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

    This matter is before the Court on Defendants' **Motion to Dismiss** [#37][1] (the

"Motion") and **Defendants' Response to Plaintiff's Motion to Amend His Third and**

**Final Amended Complaint (Docs. 51-52)** [#57] (the "Amendment Response").  Plaintiff

filed a Response [##51, 52] to the Motion, Defendants did not file a reply and their deadline

to do so has elapsed.[2]  The Motion is ripe for resolution.  The Court has reviewed the

Motion, the Response, the Amendment Response, the entire case file, and the applicable

---

[1]  "[#37]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[2]  *See* D.C.COLO.LCivR 7.1(d).

law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#37] is **GRANTED**.

## I.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  Background

### A.    Procedural Background

Plaintiff, an inmate at Sterling Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983.  *See Third and Final Am. Complaint* [#22] at 6.  Plaintiff initiated this case on September 20, 2013 by filing his original Complaint [#1].  On October 9, 2013, the Court ordered Plaintiff to file a First Amended Complaint to cure various deficiencies in the original Complaint.  *See generally Order Directing Plaintiff to Cure Deficiencies* [#4].  As a result, on October 18, 2013, Plaintiff filed his First Amended Complaint [#5].

On October 23, 2013, the Court ordered Plaintiff to file a Second Amended Complaint because of various deficiencies in his First Amended Complaint.  *See generally Order Directing Plaintiff to File Second Amended Complaint* [#8].  Specifically, the Court explained that the First Amended Complaint failed to meet the pleading requirements of Fed. R. Civ. P. 8:

> Mr. Banks' original complaint and amended complaint do not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. *See TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a

complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate Rule 8.

Mr. Banks' amended complaint fails to assert any claims. His original complaint is unnecessarily verbose and rambling. At times, his single-spaced handwriting makes reading and understanding the allegations in his original complaint difficult.  In addition, Mr. Banks fails to leave adequate margins, and the words in his original complaint are often truncated.  Rule 10.1 of the Local Rules of Practice for this Court requires that all papers filed in cases in this Court be double-spaced, legible, and have one-inch margins at the left, right, and bottom, and a one and a half inch margin at the top.  *See* D.C.COLO.LCivR 10.1C., E. and G.

Generally, Mr. Banks fails to provide "a generalized statement of the facts from which the defendant may form a responsive pleading."  *New Home Appliance Ctr., Inc., v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957).  For the purposes of Rule 8(a), "[i]t is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis."  *Id.*

It is Mr. Banks's responsibility to present his claims in a manageable and readable format that allows the Court and the defendants to know what claims are being asserted and to be able to respond to those claims.  Mr. Banks must allege, simply and concisely, his specific claims for relief, including the specific rights that allegedly have been violated and the specific acts of each defendant that allegedly violated his rights.  The Court does not require a long, chronological recitation of facts.  Nor should the Court or defendants be required to sift through Mr. Banks's verbose allegations to determine the heart of each claim. . . .

In order to state a claim in federal court, Mr. Banks "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The general rule that pro se pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

*Id.* at 3-5.  The Court also explained to Plaintiff that he "should name as defendants in his second amended complaint only those persons that he contends actually violated his federal constitutional rights."  *Id.* at 5.  In addition, the Court made clear that personal participation must be alleged as to each Defendant:

> Personal participation is an essential allegation in a civil rights action.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal participation, Mr. Banks must show that each defendant caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A supervisory official[ ] may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). . . .  Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

*Id.* at 5-6.  As a result, Plaintiff filed his Second Amended Complaint [#13] on November 8, 2013.

On January 30, 2014, the Court directed Plaintiff to file a Third and Final Amended Complaint.  *See generally Order Directing Plaintiff to File Third and Final Amended Complaint* [#19].  In that Order, the Court again informed Plaintiff of the pleading requirements of Fed. R. Civ. P. 8 and informed him that his Second Amended Complaint failed to meet this standard.  *Id.* at 3-5.  The Court also reminded Plaintiff that personal participation by each Defendant must be alleged.  *Id.* at 6.  The Court noted that:

> This is not the first case in which the Court has warned Mr. Banks to file a complaint that complies with the Rule 8 pleading requirements.  He previously initiated a civil right[s] action which was dismissed without prejudice for failure to comply with the pleading requirements of Fed. R. Civ.

> P. 8. *See Banks v. City of Lakewood*, No. 12-cv-02014-LTB (D. Colo. Feb. 22, 2013). On July 25, 2013, the United States Court of Appeals for the Tenth Circuit affirmed that dismissal. *See Banks v. Officer Doe*, No. 13-1091, 523 F.App'x 503 (10th Cir. 2013). On December 2, 2013, the United States Supreme Court denied certiorari review. *See Banks v. Doe*, No. 13-6623, 134 S. Ct. 698 (2013).

*Id.* at 7-8. At that time, the Court considered dismissing this action pursuant to Fed. R. Civ. P. 8, but found that "dismissal may bar recovery if Mr. Banks seeks to refile because the two-year statute of limitations may have expired on his § 1983 claims." *Id.* at 8. As a result, the Court granted Plaintiff leave to amend and ordered him to file a third amended complaint. The Court informed Plaintiff that it would "not consider any claims raised in separate attachments, amendments, supplements, motions, or other documents not included in the third and final amended Prisoner Complaint." *Id.* at 8. On March 5, 2013, Plaintiff filed his Third and Final Amended Complaint [#22] (the "Third Amended Complaint"), the operative pleading in this case.

On May 7, 2014, the Court entered its Order to Dismiss in Part and to Draw Case to a Presiding Judge [#23] (the "May 7 Order"), which disposed of certain claims pursuant to 29 U.S.C. § 1915(e)(2)(B). On June 13, 2014, Plaintiff filed his Motion to Amend/Alter Under Fed. R. Civ. P. 59(e)[,] 60(b)[,] & 54 and/or Notice of Appeal [#31]. On August 21, 2014, the Court denied that motion without prejudice because it was "unclear to the Court" what relief Plaintiff sought in the Motion. *See Minute Order* [#40] at 1. The Court explained to Plaintiff that:

> If Plaintiff, who proceeds in this matter pro se, is seeking leave to file an amended complaint, he must file a motion which complies with the federal and local rules, namely, Fed. R. Civ. P. 15, and which includes the proposed amended complaint as a document separate from the motion. The Court will not permit piecemeal adjudication of Plaintiff's case, thus Plaintiff must include all claims he seeks to bring and defendants he intends to name in the

proposed amended complaint.

> Alternatively, if Plaintiff seeks to file a motion pursuant to Fed. R. Civ. P. 60, seeking reconsideration of the Order [#23], he must file a motion "supported by a recitation of legal authority incorporated into the motion," D.C.COLO.LCivR 7.1(d), that makes clear which portions of the Order he seeks reconsideration of and explains under which provision of Rule 60(b) he seeks relief.

*Id.* at 2.   On September 11, 2014, Plaintiff filed his Motion to Reconsider Pursuant to Fed.

R. Civ. P. [ ] 60 [#47], which challenged the May 7 Order.   The Court denied that motion

explaining that:

> Plaintiff offers no argument that the Court has misapprehended the facts or the controlling law.  He also does not offer any new facts that were not known to him at the time he filed his Third Amended Complaint.  As noted above, "a motion for reconsideration . . . is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012.  In the Motion Plaintiff is attempting to revisit an issue that was already addressed by the Court and has offered no basis for the Court to reach a different conclusion. Accordingly, the Court finds no basis to grant the Motion.

*Order* [#55] at 5-6.

## B.    The Motion

Defendants filed the instant Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

on August 12, 2014.   *See generally Motion* [#37].   On September 11, 2014, Plaintiff

requested an extension of his deadline to respond to the Motion [#48], which was granted.

*Minute Order* [#49] at 1 (ordering Plaintiff to file his response no later than October 3,

2014).   On October 1, 2014, Plaintiff filed two documents that, combined, serve as his

Response [##51, 52] to the Motion.   On January 13, 2015, the Court entered a Minute

Order noting that the Response "includes factual allegations that were not included in

Plaintiff's Third and Final Amended Complaint," explaining that the Court construed the

Response as a motion to amend Plaintiff's Third Amended Complaint, and ordering Defendants to file a response to the Response/Motion to Amend. *Minute Order* [#56] at 1-2. On January 29, 2015, Defendant filed the Amendment Response [#57]. As discussed below, the Court finds that despite being informed of how to seek leave to amend his Third Amended Complaint and despite being given multiple opportunities to amend his claims, Plaintiff did not seek leave to further amend his claims in his Response. The Court further finds that even if Plaintiff did intend the Response as a motion to amend, such motion is improper. Therefore, the Court treats the Response as a Response to Defendants' Motion only.

## C.   Factual Allegations

In his Third Amended Complaint, as modified by the May 7 Order, Plaintiff brings four claims against Defendants relating to his incarceration at Fremont Correctional Facility ("FCF") and his transfer to the Colorado State Penitentiary ("CSP"). Specifically, Plaintiff alleges that he was placed into administrative segregation at CSP where he was unable to proceed in the Sex Offender Treatment Program ("SOTP"). *Third Am. Compl.* [#22] at 6. Plaintiff alleges that his placement in administrative segregation was "arbitrary and oppressive" and "done in retaliation for the grievance he filed at Fremont Correctional Facility against "the Mental Health Counselor for CDOS/[SOTP] and her acting Supervisor." *Id.* at 7. Plaintiff alleges that he was subject to cruel and unusual punishment and that his right to privacy was violated. *Id.* Finally, Plaintiff alleges that he was denied access to the courts. *Id.* More specifically, Plaintiff's claims are as follows:

Claim One: Defendant Englar, a mental health counselor at FCF, discussed sensitive information with CDOC officials without Plaintiff's consent. *Id.* at 8. The Court will treat this

as a Fourteenth Amendment due process claim against Defendant Englar.   Defendant

Quattlebaum directed other CDOC employees to confiscate Plaintiff's mental health records

and did not return them.   *Id*.   The Court will treat this as a Fourteenth Amendment due

process claim. Plaintiff alleges that Defendant Englar fabricated a sexual harassment claim

against him and, as a result of being found guilty of the claim, he was placed in

administrative segregation.   *Id*.   The Court will treat this as a First Amendment retaliation

claim against Defendant Englar.   He further alleges that his placement in administrative

segregation resulted in him being denied prescribed medication and access to the SOTP.

*Id*.   Plaintiff alleges that while in administrative segregation, he was

> subjected to twenty-three hour lock down, very restricted privileges, and
> stripped of the opportunity and access to the rehabilitative treatment he
> requires to make a change in life, and satisfy the requirements of his
> treatment plan.

*Id*. at 10.   The Court will treat these allegations as Eighth Amendment claims regarding

denial of access to medical care and Plaintiff's conditions of confinement.

Claim Two: Plaintiff realleges that Defendant Englar fabricated a sexual harassment claim

against him because he filed a grievance against her relating to her alleged violation of his

right to privacy.   *Id*. at 11.   As with Plaintiff's similar allegations in Claim One, the Court will

consider this as part of his First Amendment retaliation claim and will analyze it in

conjunction with Plaintiff's allegations in Claim One.   Plaintiff also alleges that Defendant

Katzenmeyer ordered Defendant Englar and a librarian to file incident reports about Plaintiff

and that Defendant Katzenmeyer called Plaintiff a "fucking predator."   *Id*.   Plaintiff alleges

that when he told Defendant Katzenmeyer that he intended to pursue legal action,

Defendant Katzenmeyer threatened to have CDOC employees file incident reports against

8

Plaintiff. *Id.* at 12.  The Court will treat this as a First Amendment claim against Defendant Katzenmeyer.

Claim Three: Plaintiff alleges that when he was transferred to CSP from FCF, the mail room rejected a package sent to him that contained "materials essential in the filing of" an on-going civil lawsuit.  *Id.* at 13.  The Court will treat this as a denial of access to the Courts claim.   Plaintiff further alleges that he "was deprived of the opportunity to pursue [c]ertification as a [p]aralegal" through a correspondence course.  *Id.*  Plaintiff also alleges that Defendant Crosley began harassing him because of his classification as a sex offender and due to the claim filed by Defendant Englar when he was at FCF.  *Id.*  Plaintiff maintains that Defendant Crosley filed a "bogus sexual harassment claim" against him as a result of a grievance Plaintiff filed against her.  *Id.*  Plaintiff alleges that the sexual harassment claim was filed in retaliation for his filing of his grievance.  *Id.* 13-14.  The Court will treat this as a First Amendment retaliation claim.   Plaintiff further alleges that Defendant Soares, the Assistant Warden at CSP, "failed to address the conduct of her [o]fficers, thereby failing in the execution of her duty."  *Id.* at 14.  The Court will treat this as a supervisory liability claim.

Claim Four: Plaintiff alleges that Defendant Malebranche, " while in the [c]ontrol [t]ower . . . inflicted a humiliating and [e]mbarassing search as Plaintiff took a shower."  *Id.* at 15. Plaintiff maintains that she "wrote an incident report alleging [that] Plaintiff sexually harassed her as she purposefully watched him take a shower."  *Id.* (emphasis omitted). Plaintiff further alleges that Defendant Malebranche wrote another incident report alleging that Plaintiff sexually harassed her while he was using the toilet in his cell.  *Id.*  The Court will treat this as a privacy claim and a First Amendment retaliation claim.

9

Regarding all of his claims, Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, attorney's fees, and interest. *Id.* at 17-18.

## III.  The Response

As noted above, on January 13, 2015, the Court ordered Defendants to file the Amendment Response addressing whether Plaintiff should be granted leave to amend his Third Amended Complaint. *Minute Order* [#56] at 2.  In the Amendment Response, Defendants argue that Plaintiff should not be granted leave to amend for several reasons. First, Defendants assert that the Court gave Plaintiff multiple opportunities to amend his claims and the Court's Order Directing Plaintiff to File [a] Third and Final Amended Complaint warned Plaintiff that he was being given "one final opportunity to cure the[ ] deficiencies" in his Second Amended Complaint "by submitting a third and final amended Prisoner Complaint that complies with D.C.COLO.LCivR 10.1 and sues the proper parties, states claims clearly and concisely in compliance with Fed. R. Civ. P. 8, and alleges specific facts that demonstrate how each named defendant personally participated in the asserted constitutional violations." *Order Directing Plaintiff to file Third and Final Amended Complaint* [#19] at 8; *Amendment Response* [#57] at 5.  Second, Plaintiff should not be allowed to further amend his claims because "the proffered amendments fail to cure the deficiencies" in the Third Amended Complaint and are, therefore, subject to dismissal pursuant to Fed. R. Civ. P. 12. *Amendment Response* [#57] at 5.  Defendants also argue that amendment would be futile. *Id.* at 6-8

The Court agrees with Defendants that to the extent the Response can be read as a motion seeking leave to amend his Third Amended Complaint, such request should be denied.  First, the rules of this Court specifically explain that "[a] motion shall not be

included in a response or reply to the original motion."   D.C.COLO.LCivR 7.1(d).   In

addition, Fed. R. Civ. P. 7(b) makes clear that "[a] request for a court order must be made

by motion."  Fed. R. Civ. P. 7(b).   A pro se litigant must follow the same procedural rules

that govern other litigants, including the Local Rules of this Court and the Federal Rules of

Civil Procedure.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *Pallottino v. City

of Rio Rancho*, 425 F.App'x 710, 713 (10th Cir. 2011) (unpublished decision) ("[T]he pro

se status of [Plaintiffs] does not relieve them of their obligations to comply with procedural

rules . . . ."); *see also Indiana v. Edwards*, 554 U.S. 164, 185 (2008) ("A *pro se* defendant

may not . . . fail to comply with relevant rules of procedural . . . law." (quotation marks and

citation omitted)); *Kennington v. U.S. Dep't of the Treasury*, 490 F.App'x 939, 942 n.1 (10th

Cir. 2012) (table decision) (disregarding letter submission by pro se party that did not follow

procedural rules).  Second, the Court has given Plaintiff ample opportunities to amend his

claims and as recently as August 21, 2014, it specifically informed him of the procedures

he must follow in order to seek leave to amend.  *See Minute Order* [#40] at 1.  In response

to that Minute Order Plaintiff did not seek leave to amend, instead he sought

reconsideration of a prior Order entered in this case.  *See generally Motion to Reconsider

Pursuant to Fed. R. Civ. P. Rule 60* [#47].  Accordingly, to the extent Plaintiff's inclusion of

additional factual allegations in the Response could be construed as a request to further

amend the Third Amended Complaint, such request is improper and subject to denial.

Further, the Court notes that the Response does not explicitly request amendment of the

operative pleading, instead, it simply includes additional factual allegations.  Therefore, the

Court does not treat the Response as a motion.  The Court addresses the inclusion of

additional factual allegations in the Response in its analysis below.

## IV.  The Motion

In the Motion, Defendants argue that to the extent Plaintiff's claims seek compensatory and punitive damages, such claims are barred under the Eleventh Amendment and by the Prison Litigation Reform Act ("PLRA").  *Motion* [#37] at 5-8.

Defendants further argue that Claim One fails.  First, Defendants maintain that to the extent Plaintiff alleges a Fourteenth Amendment due process claim, he fails to allege a protected liberty or property interest and fails to allege a significant and atypical hardship. *Id.* at 8.  In support of this contention, Defendants argue that Plaintiff fails to identify "which remaining [D]efendant violated his due process rights . . . ." *Id.*  Defendants also argue that "Plaintiff fails to allege how his due process rights were violated and what procedural failure violated his rights." *Id.*  Defendants maintain that "Plaintiff's statements regarding the COPD proceedings and his transfer to Administrative Segregation are nothing more than conclusory allegations." *Id.* at 8-9.  With regard to the internal procedure, Defendants aver that Plaintiff's allegations establish that he was allowed to appeal his conviction and that, therefore, he was afforded due process.  *Id.* at 9.  With regard to Plaintiff's allegations regarding Defendants Englar and Quattlebaum, Defendants argue that Plaintiff fails to allege a protected liberty or property interest. *Id.* at 9-11.  Defendants further maintain that, even if Plaintiff did allege a protected liberty or property interest, he fails to allege that the deprivation imposed an atypical and significant hardship. *Id.* at 11.  Finally, Defendants state that "to the extent Plaintiff is alleging that defendant Englar and/or Defendant Quattlebaum has in some way violated HIPPA by releasing medical information, there is no private right of action under HIPAA." *Id.* at 12 (citing *Univ. of Colo. Hosp. v. Denver*

*Publ'g Co.*, 340 F.Supp.2d 1142, 1144-45 (D. Colo. 2004)).[3]

With regard to the portion of Claim One that appears to assert an Eighth Amendment claim, Defendants argue that (1) Plaintiff "fails to identify which specific defendants violated his Eighth Amendment rights or directly deprived him of his basic necessities," (2) that Plaintiff does not allege that he suffered a sufficiently serious deprivation; and (3) that Plaintiff does not plead facts showing that any Defendant was deliberately indifferent to a risk of harm. *Id.* at 14-15.

Defendants further argue that Plaintiff's First Amendment retaliation claim against Defendants Englar and Scollard fails because Plaintiff does not plead facts to "show that the intent behind the defendant's [alleged] action was to retaliate for the exercise of the plaintiff's constitutional rights . . . ." *Id.* at 17 (citing *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990)); *id.* at 17-20.

Finally, with regard to Claim One, Defendants argue that "[t]o the extent Plaintiff has asserted any civil rights claim against Defendant Scollard, that claim fails because Plaintiff has not alleged any personal participation on the part of Defendant Scollard." *Id.* at 20.

Regarding Claim Two[4], Defendants argue that Plaintiff's retaliation claim against

---

[3]  The Court notes that Plaintiff does not discuss HIPAA in his Third Amended Complaint. Further, it is not the Court's place "to raise and frame the issue, then research it for something favorable to" a pro se plaintiff. *Boles v. Newth*, 479 F.App'x 836, 843 (10th Cir. 2012) (unpublished decision) (citing *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)). "*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'" *Yang*, 525 F.3d at 927 n.1 (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir.1994)). Accordingly, the Court does not address Defendants' alternative argument regarding HIPAA herein.

[4]  In the interest of brevity, to the extent Plaintiff attempts to reassert the same claim in separate causes of action, the Court consolidates the allegations and treats them as a single claim. Similarly, the Court does not summarize Defendants' arguments regarding duplicate claims.

Defendant Katzenmeyer is based on conclusory allegations alone and the claim also fails because Plaintiff does not allege any retaliatory intent or motive. *Id.* at 21.  With regard to Plaintiff's allegation that Defendant Katzenmeyer used foul language, Defendants maintain that "[t]hreats or verbal abuse, by themselves, do not rise to the level of a § 1983 cause of action." *Id.* (citing *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982)).

With regard to Claim Three, Defendants maintain that Plaintiff fails to sufficiently allege a denial of access to the courts claim for two reasons.  First, he fails to specifically identify any employee from the mail room who could be held liable for this claim.  *Id.* at 22. Plaintiff does not allege that any of the named Defendants remaining in this action worked in the mail room or had any involvement with the individuals working the mail room.  *Id.*  As a result, they argue that this claim does not meet Fed. R. Civ. P. 8's pleading standard. Second, Defendants noted that the civil lawsuit that was dismissed was dismissed for failure to meet Red. R. Civ. P. 8's pleading requirements, not because of any actions of any Defendant or the CDOC staff.  *Id.* at 23.

Further, to the extent that Plaintiff alleges a retaliation claim against Defendant Crosley in Claim Three, Defendants argue that this claim should be dismissed because Plaintiff fails to allege retaliatory motive or a link between the alleged conduct and Plaintiff's exercise of a constitutionally protected right.  *Id.* at 23-24.  With regard to Plaintiff's allegation that Defendant Soares, Defendant Crosley's supervisor, was deliberately indifferent to Defendant Crosley's retaliation, Defendants maintain that this claim fails because Plaintiff does not allege any personal participation by Defendant Soares.  *Id.* at 24.

In addition, Defendants argue that to the extent Claim Four alleges a privacy claim

14

against Defendant Malebranche, it should be dismissed because "[a]n inmate does not have a reasonable expectation of privacy in his cell, or in activities which normally occur in homes . . . ." *Id.* at 26 (citing *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984)).  Second, Defendants maintain that to the extent Plaintiff is asserting a retaliation claim against Defendant Malebranche in Claim Four, the claim fails because he fails to allege that he was engaged in protected conduct.  *Id.* at 27.

Finally, Defendants argue that they are entitled to qualified immunity.  *Id.* at 28-29. They assert that "Plaintiff fails to demonstrate that Defendants violated his constitutional rights."  *Id.* at 28.

In his 62-page Response, Plaintiff offers a plethora of new factual allegations.  *See generally Response* [##51, 52].  At the end of the two documents that constitute the Response, Plaintiff swears that the facts contained in the Response are true and correct. *See Response* [#51] at 26; *Response* [#52] at 20.  In addition, Plaintiff attaches an affidavit signed by him, an affidavit signed by another inmate, a form titled Department of Correction[s] Administrative Segregation Privilege Level Review, a form titled Colorado Department of Corrections Offender Grievance Form, a handwritten addendum to the Response, a form titled Request for Legal Assistance, a letter dated April 11, 2013 that includes one attachment, and a letter dated July 17, 2013.  *Response* [#52] at 22-35.

Plaintiff appears to "miscontrue[ ] the court's function on a Rule 12(b)(6) motion, which 'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's *complaint alone* is legally sufficient to state a claim for which relief may be granted.'" *Stinson ex rel. United States v. Maynard*, 341 F.App'x 413, 417 (10th Cir. 2009) (unpublished decision) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)

(emphasis in *Stinson*)).  In *Stinson*, the Tenth Circuit affirmed the district court's dismissal with prejudice of the pro se plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  In doing so, the Tenth Circuit noted that absent certain exceptions, "when considering a Rule 12(b)(6) motion, "a federal court may only consider facts alleged within the complaint."  *Id.* (quoting *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)).  As the Tenth Circuit indicates, there are certain exceptions to the general rule that the Court cannot consider any documents outside of the complaint when analyzing a Rule 12 motion to dismiss.  Accordingly, the Court next considers whether any of the documents submitted by Plaintiff may be considered by the Court.

The Court may consider documents outside of the complaint on a motion to dismiss in three instances.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal*, 453 F.3d at 1265 n.24.  Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

As an initial matter, none of the documents relate to Defendants' arguments made pursuant to Fed. R. Civ. P. 12(b)(1).  In addition, the two affidavits attached to the Response clearly do not fall into the other two categories.  Therefore, the Court cannot consider the affidavits as part of its analysis.

The form titled Department of Correction[s] Administrative Segregation Privilege Level Review is not referenced in the Third Amended Complaint and does not appear to

16

be central to the claims alleged by Plaintiff.  *See generally Third Am. Compl.* [#22].  The

only factual allegations Plaintiff makes that would coincide with the form are found in Claim

Three when Plaintiff alleges that Defendant Soares "acted with deliberate [i[ndifference and

failed to address the conduct of her [o]fficers, thereby failing in the execution of her duty."

*Compare Third Am. Compl.* [#22] at 14 *with Response* [#52] at 29 (form signed by

Defendant Soares).  This mention of factual allegations that may or may not relate to the

form does not constitute referral to the document.  In addition, the form does not appear

to be a public record or court document.  Accordingly, the Court will not consider the form

titled Department of Correction[s] Administrative Segregation Privilege Level Review when

considering the Motion.

Similarly, the form titled Colorado Department of Corrections Offender Grievance

Form is not referenced in the Third Amended Complaint and does not appear to be central

to the claims alleged by Plaintiff.  *See generally Third Am. Compl.* [#22].  The only factual

allegations to which this form may relate are Plaintiff's claims about the alleged mishandling

of his mail.  The form appears to be an internal grievance form he submitted about the

incident.  *Compare Third Am. Compl.* [#22] at 13 *with Response* [#52] at 30.  The fact that

the form relates to the same incident does not mean that the Third Amended Complaint

refers to the document.  In addition, the form does not appear to be a public record or court

document.  Accordingly, the Court will not consider the form titled Colorado Department of

Corrections Offender Grievance Form when considering the Motion.

Plaintiff also attaches a handwritten addendum to the Response.  The handwritten

addendum includes Plaintiff's statements about how the mail room staff handled his mail.

*Response* [#52] at 31.  The addendum is also signed and sworn under penalty of perjury.

17

*Id.* Therefore, the Court will treat it as another affidavit.  This document is not referenced in the Third Amended Complaint nor is it central to Plaintiff's claims.  The document is not a public record or court document.  Accordingly, the Court will not consider the addendum/affidavit when considering the Motion.

In addition, Plaintiff attaches a form titled Request for Legal Assistance to the Response.  This form states that Plaintiff is requesting advice about the incident with his mail being allegedly mishandled.  *Response* [#52] at 32.  This document is not mentioned in the Third Amended Complaint nor is it central to the claims alleged in the Third Amended Complaint.  Furthermore, the document is not a public record or court document.  Accordingly, the Court will not consider the form titled Request for Legal Assistance when considering the Motion.

The letter dated April 11, 2013 informs Plaintiff that a grievance form he filed about the mail room staff's behavior was not properly completed and instructed Plaintiff that he "did not follow the grievance procedure . . . ."  *Response* [#52] at 33.  It attaches as an exhibit the grievance form that it discusses.  *Id.* at 34.  Similarly, the letter dated July 17, 2013 informs Plaintiff that his grievance regarding the correspondence course he wanted to take was denied.  *Id.* at 35.  Neither of these letters are referenced in the Third Amended Complaint nor are they central to the claims alleged by Plaintiff.  In addition, the letters are not public records or court documents.  Accordingly, the Court will not consider the letters when considering the Motion.

Turning to the portions of the Response that do not contain new factual allegations or information the Court cannot consider, the Court will briefly summarize Plaintiff's arguments.  First, Plaintiff maintains that Defendant Englar violated CDOC policy and/or

18

his right to privacy by disclosing confidential information relating to his sexual addiction treatment and that he has a private right of action to pursue this claim. *Response* [#51] at 10-13.  Plaintiff argues that he did not waive his right to privacy or the therapist-client privilege.  *Id.* at 13-15.  Plaintiff further avers that his placement in administrative segregation was arbitrary.  *Id.* at 19.  Plaintiff maintains that "[a] reasonable juror can conclude that Englar's alleged misrepresentations to Scollard[ ] and other CDOC officials could have led to an incorrect medical judgment that Banks was a danger to himself and in turn led to unconstitutional decision to breach the confidentiality contract and policy 950-02 and his placement in administrative segregation."  *Id.* at 26.  In response to Defendants' Eleventh Amendment argument, Plaintiff argues that because he seeks declaratory and injunctive relief, his claims should not be dismissed.  *Id.* [#52] at 3.  Plaintiff avers that his placement in administrative segregation was an atypical and significant hardship.  *Id.* at 10-11.  Plaintiff maintains that he did allege retaliation claims against Defendants Crosley and Soares because he demonstrated "that he was intentionally and irrationally singled-out from others who were similarly situated."  *Id.* at 15.

## A.    Standard of Review

### 1.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction.  The determination of a court's jurisdiction over the subject is a threshold question of law.  *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506

(2006). If at any time, the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506. A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003.

### 2. Fed. R. Civ. P. 12(b)(6) and 8(a)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will

not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).  As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible."  *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry."  *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010).  Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims."  *Tuttamore*, 429 F. App'x at 689.

### 3.    Plaintiff's Pro Se Status

Plaintiff is appearing pro se.  When considering Plaintiff's Third Amended Complaint and Response, the Court is mindful that it must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972);  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a pro se litigant's advocate, nor should it "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### 4.    Substantial Deference Accorded to Prison Administrators

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and

22

maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations."  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (internal quotation marks and citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d at 269 (citations omitted).

**B.    Analysis**

Because of the shot-gun style employed by Plaintiff in his Third Amended Complaint, the Court will address the claims by grouping them based on the legal issues raised.

**1.    Eleventh Amendment**

Defendants first raise the issue of Eleventh Amendment immunity.  *Motion* [#37] at 5-6.  This challenges the court's subject matter jurisdiction.  *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).   The doctrine of Eleventh Amendment immunity protects states and their agents from suit when acting in their official capacities.  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-559 (10th Cir. 2000).   To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985));  *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983).  Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Here, Defendants are employees of CSP and FCF. *Third Am. Compl.* [#22] at 1-5.

Therefore, they are state officers. Consequently, all of Plaintiff's official capacity claims

against Defendants for monetary relief must be **dismissed with prejudice** for lack of

subject matter jurisdiction on the basis of Eleventh Amendment immunity. *Compare*

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) (recognizing

the established rule that "where the district court dismisses for lack of jurisdiction . . . , the

dismissal must be without prejudice" because a court without jurisdiction lacks power "to

make any determination of the merits of the underlying claim") *with* Norris v. Buena Vista

Correctional Complex, No. 12-cv-00924-DME-KMT, 2013 WL 674030, *1 (D. Colo. Feb.

25, 2013) (J. Ebel, writing for the District Court, dismissing with prejudice claims against

the CDOC and Buena Vista Correctional Complex that were barred pursuant to the

Eleventh Amendment); *see also Shepard v. Rangel,* No. 12-cv-01108-RM-KLM, 2014 WL

7366662, *11 (D. Colo. 2014) (adopting recommendation to dismiss with prejudice claims

against defendants in their official capacity for lack of jurisdiction pursuant to the Eleventh

Amendment); *Johnson v. Lappin,* No. 10-cv-02235-REB-CBS, 2011 WL 1656790, at *4 (D.

Colo. May 02, 2011) ("To the extent that [Plaintiff] asserts a *Bivens* claim for money

damages against Defendants in their official capacities, such claims are barred by

sovereign immunity and are thus properly dismissed with prejudice for lack of subject

matter jurisdiction.").

## 2.    The PLRA

Defendants argue that to the extent Plaintiff seeks compensatory damages, such

request should be denied pursuant to the PLRA. *Motion* [#37] at 6-7.  42 U.S.C. §

1997e(e) of the PLRA provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Pursuant to Section 1997e(e), Plaintiff's "suit cannot stand unless he has suffered a physical injury in addition to mental or emotional harms." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *see also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (holding that § 1997e(e) bars compensatory "damages for mental and emotional injuries in the absence of physical injury"). The limitations under § 1997e(e) apply only to suits for damages. Therefore, "§ 1997e(e) does not affect actions for declaratory or injunctive relief." *Perkins*, 165 F.3d at 807-08; *Searles*, 251 F.3d at 876.

Plaintiff asserts that his placement in administrative segregation resulted in him not being able to complete the SOTP. *Third Am. Compl.* [#22] at 9. While he contends that placement in administrative segregation amounted to cruel and unusual punishment, he does not allege any physical injury. *Id.* at 10. Plaintiff does allege that he had panic attacks. *Id.* at 9. He further alleges that he suffered "chest pain," "heart palpitations," and "headaches" associated with the panic attacks. *Id.* at 9-10. It is clear that while a plaintiff's alleged physical injury "need not be substantial" to satisfy the § 1997e(e) requirement, it must be more than de minimis. *Clifton v. Eubank*, 418 F.Supp.2d 1243, 1245 (D. Colo. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003)). "Physical pain, standing alone, is a de minimis injury . . . and, accordingly, fails to overcome the PLRA's bar . . . ." *Id.* at 1246 (citing *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). Furthermore, Plaintiff alleges that his chest pain resulted from his panic attacks. *Third Am. Compl.* [#22] at 9-10. This is insufficient to

overcome the PLRA's bar because,

> [a] straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is separate from mental and emotional injuries he may have suffered. Consistent with this reading, a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries.

*Hughes v. Colo. Dep't of Corr.*, 594 F.Supp.2d 1226, 1238 (D. Colo. 2009) (citations omitted) (noting that physical manifestations of depression and anxiety "cannot support claims for damages pursuant to 42 U.S.C. § 1997e(e).").  Quite simply, Plaintiff fails to include any factual allegations that would demonstrate or even infer that he suffered physical injury caused by conduct attributable to Defendants.  This omission is fatal to Plaintiff's claim for compensatory damages.  Accordingly, the Court finds that Plaintiff's allegations of chest pain relating to his panic attacks do not meet the requirements of § 1997e(e).  Therefore, the Court concludes that Plaintiff's claims for compensatory damages must be **dismissed with prejudice**.  *See Moore v. Arguello*, No. 13-cv-01861-WJM-BNB, 2014 WL 4115915, at *4 (D. Colo. Aug. 21, 2014) (dismissing individual capacity claim against defendant with prejudice for failure to state a claim because the plaintiff alleged that he only suffered mental anguish and pain, distress, and headaches); *Hughes*, 594 F.Supp.2d at 1245 (dismissing § 1983 claims with prejudice).

### 3.    Qualified Immunity

Defendants seek qualified immunity with regard to all claims asserted against them in their individual capacities.  *Motion* [#37] at 28-29.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position

would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity offers protection both from trial and the other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established."  *Id.*  The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim.  *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Here, the Court will first analyze whether Plaintiff sufficiently alleges a constitutional violation with regard to each of his claims against Defendants.  If Plaintiff's allegations against any Defendant do not sufficiently allege a constitutional violation, the Court need not continue on to the second part of the analysis.

### a.    First Amendment Claims

As mentioned above, the Court will group Plaintiff's claims by legal basis in order to address them most efficiently.  The Court begins with Plaintiff's First Amendment claims.

### i.    Defendant Englar

In Claim Two, Plaintiff alleges that Defendant Englar fabricated a sexual harassment claim against him because he filed a grievance against her relating to her alleged violation

of his right to privacy. *Third Am. Compl.* [#22] at 11. The Court will treat this as a First Amendment retaliation claim and will analyze it in conjunction with Plaintiff's factual allegations in Claim One.

The First Amendment prohibits prison officials from retaliating against inmates for exercising their right to participate in the prison grievance process. *Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). Retaliatory acts under 42 U.S.C § 1983 include acts that would otherwise be permissible if they were not conducted in retaliation. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005) (citing *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990)); *Maschner*, 899 F.2d at 948. For example, prison officials cannot terminate inmates from their jobs in retaliation for participating in the prison grievance process. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citing *Frazier*, 922 F.2d at 561-62).

Inmates alleging retaliation bear a "substantial burden." *Kan. Penn Gaming, LLC*, 656 F.3d at 1217 (quoting *Jicarilla*, 440 F.3d at 1212) (further citation omitted). They must allege:

> (1) that plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Mimics*, 394 F.3d at 847 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted)).

The first element the Court considers is whether Plaintiff "was engaged in

constitutionally protected activity." *See Mimics*, 394 F.3d at 847. Plaintiff alleges that Defendant Englar retaliated against him because Plaintiff filed "a grievance against his Mental Health and SOTMP therapist for her breach of Therapist-Client Confidentiality . . . ." *Third Am. Compl.* [#22] at 11. The right of access to the courts is a constitutionally protected right, and that right encompasses access to the prison grievance process. *See, e.g.*, *Sherrat v. Utah Dep't of Corr.*, 545 F.App'x 744, 747 (10th Cir. 2013) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006); *Maschner*, 899 F.2d at 947-48). Accordingly, Plaintiff's use of the grievance process was protected conduct, and, therefore, satisfies the first element of a First Amendment retaliation claim. *See Mimics*, 394 F.3d at 847.

The second element the Court considers is whether Defendant Englar's "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.* "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.'" *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). The injury alleged may be "no more tangible than a chilling effect.'" *Rogers*, 2010 WL 3547432, at *4 (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)). Moreover, "'[s]peech can be chilled even when not completely silenced.'" *Id.* at *4 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)).

Here, Plaintiff alleges that Defendant Englar "fabricated a [b]ogus [s]exual [h]arassment claim[ ] and followed it up by urging additional staff members . . . to follow[ ] suit by constructing an unwarranted report against Plaintiff." *Third Am. Compl.* [#22] at

11.  If Defendant Englar did file a sexual harassment claim against Plaintiff in retaliation for his use of the grievance process, that action "would chill a person of ordinary firmness from continuing to engage in that activity."  *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001); *see Zarska v. Higgins*, 171 Fed.Appx. 255, 259 (10th Cir. 2006), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250, 256 (2006)) ("[W]e hold that [Defendant's] alleged filing of disciplinary proceedings to retaliate for a report of misconduct 'would chill a person of ordinary firmness from continuing to engage in that activity.'").

With regard to the third factor, Plaintiff "must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Peterson*, 149 F.3d at 1144 (citation omitted).  That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier*, 922 F.2d at 562 n.1; *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").  The courts have recognized that with regard to retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  *See Maschner*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with the "only means available to him—circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants").

In the Third Amended Complaint, Plaintiff states in a conclusory fashion that Defendant Englar "initiated the events after Plaintiff filed a grievance against her . . . ."  *Third Am. Compl.* [#22] at 11.  Plaintiff also alleges that "[a]fter Plaintiff became [the]

30

subject of a disciplinary report revolving around sexual harassment" he was placed in administrative segregation. *Id.* These are merely conclusory allegations that the Court cannot credit. In addition, these conclusory allegations are undercut by Plaintiff's other factual allegations. Plaintiff states that he was placed into administrative segregation on August 22, 2012, but that he did not file his grievance regarding Defendant Englar until August 31, 2012. *Id.* at 8-9. As noted above, suspicious timing can be offered as evidence to support allegations of retaliation, however, here Plaintiff alleges that he was transferred to administrative segregation *before* he filed a grievance against Defendant Englar. As a result, Plaintiff has not alleged that Defendant Englar's "alleged retaliatory motives were the 'but for' cause of" her allegedly retaliatory actions. *Peterson*, 149 F.3d at 1144. Therefore, with regard to Plaintiff's First Amendment retaliation claim against Defendant Englar, the Court finds that Plaintiff has failed to allege "that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.* As a result, Plaintiff fails to state a First Amendment retaliation claim against Defendant Englar.

### ii.   Defendant Katzenmeyer

In Claim Two Plaintiff alleges that Defendant Katzenmeyer ordered Defendant Englar and a librarian to file incident reports about Plaintiff and that Defendant Katzenmeyer called Plaintiff a "fucking predator." *Third Am. Compl.* [#22] at 11. Plaintiff alleges that when he told Defendant Katzenmeyer that he intended to pursue legal action, Defendant Katzenmeyer threatened to have CDOC employees file incident reports against Plaintiff. *Id.* at 12.

As explained above, to state a First Amendment retaliation claim against Defendant Katzenmeyer Plaintiff must allege:

(1) that plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Mimics*, 394 F.3d at 847 (citing *Worrell*, 219 F.3d at 1212 (quotations omitted)).  Here, Plaintiff fails to allege facts to meet the second and third prongs.  While the injury alleged may be "no more tangible than a chilling effect.'"  *Rogers*, 2010 WL 3547432, at *4 (quoting *Gomez*, 255 F.3d at 1127), Plaintiff does not allege Defendant Katzenmeyer's actions caused him to suffer any injury.  While Plaintiff does allege that "fabricated reports" were filed against him following Defendant Katzenmeyer's threat, *Third Am. Compl.* [#22] at 12, Plaintiff's allegation that the reports were fabricated is conclusory, the allegation does not constitute an injury, and it does not provide any information that would allow the Court to conclude that Defendant Katzenmeyer's alleged actions "would chill a person of ordinary firmness from continuing to engage" in protected conduct.  *Mimics*, 394 F.3d at 847.  Furthermore, Plaintiff does not allege facts to show that Defendant Katzenmeyer's "alleged retaliatory motives were the 'but for' cause of" his allegedly retaliatory actions.  *Peterson*, 149 F.3d at 1144.   Accordingly, Plaintiff fails to state a First Amendment retaliation claim against Defendant Katzenmeyer.

With regard to Plaintiff's allegation that Defendant Katzenmeyer used foul language, "verbal taunts do not rise to the level of a constitutional violation."  *Bingham v. Kochevar*, No. 10-cv-00604-DME-CBS, 2012 WL 2675260, at *13 (D. Colo. Mar. 23, 2012) (citing *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (verbal abuse normally states no constitutional violation); *Abeyta v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse is insufficient to establish a

constitutional violation"); *Wagner v. Wheeler*, 13 F.3d 86, 92-93 (4th Cir. 1993) (verbal abuse alone does not constitute a deprivation of constitutional rights); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal quotation marks and citation omitted); *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372-73 (S.D.N.Y.2007) (verbal harassment or even threats alone are not actionable under 42 U.S.C. § 1983)).   Accordingly, Plaintiff's allegation that Defendant Katzenmeyer called him a "fucking predator" fails to demonstrate a violation of any constitutional right.

### iii.   Defendant Crosley

In Claim Three Plaintiff alleges that Defendant Crosley began harassing him because of his classification as a sex offender and due to the sexual harassment claim filed by Defendant Englar when Plaintiff was at FCF.   *Third Am. Compl* [#22]. at 13. Plaintiff maintains that Defendant Crosley filed a "bogus sexual harassment claim" against him as a result of a grievance Plaintiff filed against her.   *Id.*   Plaintiff alleges that the sexual harassment claim was filed in retaliation for his filing of his grievance.   *Id.* 13-14.

These allegations also fail to meet the second prong of the First Amendment analysis.   In a conclusory manner, Plaintiff alleges that Defendant Crosley's alleged harassment led to the filing of a "[b]ogus sexual harassment claim . . . against Plaintiff." This conclusory allegation does not provide any information that would allow the Court to conclude that Defendant Crosley's actions "would chill a person of ordinary firmness from continuing to engage" in protected conduct,  *Mimics*, 394 F.3d at 847, or "that but for the

retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Peterson*, 149 F.3d at 1144. Accordingly, Plaintiff fails to state a First Amendment retaliation claim against Defendant Crosley.

### iv.   Defendant Malebranche

In Claim Four Plaintiff alleges that Defendant Malebranche "wrote an incident report alleging Plaintiff sexually harassed her as she purposefully watched him take a shower." *Third Am. Compl.* [#22] at 15 (emphasis omitted). Plaintiff maintains that Defendant "Malebranche purposefully wrote another [i]ncident [r]eport of [s]exual [h]arassment[ ] as Plaintiff used the toilet in his cell." *Id.* Plaintiff fails to state a First Amendment retaliation claim against Defendant Malebranche because Plaintiff does not allege that he was engaged in constitutionally protected activity. *Mimics*, 394 F.3d at 847.

### v.   Denial of Access to the Courts

In Claim Three Plaintiff alleges that when he was transferred to CSP from FCF, the mail room rejected a package sent to him that contained "materials essential in the filing of" an on-going civil lawsuit. *Third Am. Compl* [#22]. at 13. The Court will treat this as a denial of access to the Courts claim.

As an initial matter, Plaintiff fails to identify any Defendant who took any actions regarding this claim. As noted above, Fed. R. Civ. P. 8 requires Plaintiff to identify his claims in a clear and concise manner. Although Rule 8 does not require a plaintiff to plead "'detailed factual allegations,'" a pleading that asserts only "'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather, a pleading must contain

34

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The purpose of the pleading requirement is "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  *Kansas Penn Gaming*, 656 F.3d at 1215 (internal quotations and citations omitted).

As the Court previously explained to Plaintiff, in order to state a claim in federal court, Plaintiff "'must explain what each defendant did to him or her; when each defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.'"  *Order Directing Plaintiff to File Second Amended Complaint* [#8] at 5 (quoting *Nasious*, 492 F.3d at 1163)*; Order Directing Plaintiff to file Third and Final Amended Complaint* [#19] at 5 (quoting *Nasious*, 492 F.3d at 1163).  The Tenth Circuit has made clear that in § 1983 cases, like the instant case, the pleading requirements are particularly important:

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state. *See Twombly*, 127 S.Ct. at 1970-71 n. 10.

*Robbins v. Okla.*, 519 F.App'x 1242, 1249-50 (10th Cir. 2008).  Plaintiff does not identify any Defendant with regard to this claim.  Accordingly, this claim may be dismissed for failure to comply with the pleading requirements of Fed. R. Civ. P. 8.  However, because Plaintiff also fails to state a cognizable legal claim, the Court briefly addresses the merits of this claim.

Inmates have the right to obtain meaningful access to the courts to pursue constitutional claims. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To assert a claim for denial of access to the courts, a plaintiff "must show that non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.'"  *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)).   However, "the right of access to the courts is implicated only if the underlying claim is nonfrivolous, arguable, and 'more than hope.'" *Fawley v. GEO Grp., Inc.*, 543 F.App'x 743, 745 (10th Cir. Oct. 13, 2013) (unpublished decision) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)).  Further, an inmate alleging denial of access to the courts must allege an actual injury. *Lewis*, 518 U.S. at 349.  To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  *Id.* at 356; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis*, 518 U.S. at 351).

Plaintiff alleges that Civil Action No. 12-cv-02014-LTB was dismissed due to the actions of the CSP mail room staff. *Third Am. Compl.* [#22] at 13.  However, a review of the Court's docket[5] reveals that the case was dismissed without prejudice for failure to comply with Fed. R. Civ. P. 8. *Order of Dismissal* [#44] filed in 12-cv-02014-LTB.  Plaintiff appealed and the Tenth Circuit affirmed the dismissal. *See generally Order and Judgment*

---

[5]  As discussed above, normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson*, 952 F.2d at 1261.  However, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal*, 453 F.3d at 1265 n.24.  The Court's docket in 12-cv-02014-LTB falls within this category of documents.

[#59] filed in 12-cv-02014-LTB.  Plaintiff again appealed to the Supreme Court which denied his petition for a writ of certiorari.  *See generally Letter* [#63] filed in 12-cv-02014-LTB.  Accordingly, this claim fails because Plaintiff cannot plausibly allege that the alleged confiscation of his mail resulted in any injury due to the alleged actions of the mail room staff.  *See Peterson*, 149 F.3d at 1145 ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions.").  Plaintiff availed himself of every opportunity to appeal the dismissal of his complaint and failed to file a new action when the case was dismissed without prejudice.  Accordingly, Plaintiff fails to state a denial of access to the courts claim.

### b.    Correspondence Course

In Claim Three Plaintiff further alleges that he "was deprived of the opportunity to pursue [c]ertification as a [p]aralegal" through a correspondence course.  *Third Am. Compl* [#22]. at 13.  It is unclear to the Court what constitutional right Plaintiff believes is implicated by this claim.  In addition, Plaintiff does not identify any Defendant with regard to this claim.  Accordingly, this claim is subject to dismissal for failure to comply with the pleading requirements of Fed. R. Civ. P. 8.

### c.    Eighth Amendment Claims

In Claim One, Plaintiff alleges that his placement in administrative segregation resulted in him being denied prescribed medication and access to the SOTP.    *Third Am. Compl.* [#22] at 8.  Plaintiff alleges that while in administrative segregation, he was

> subjected to twenty-three hour lock down, very restricted privileges, and stripped of the opportunity and access to the rehabilitative treatment he requires to make a change in life, and satisfy the requirements of his treatment plan.

*Third Am. Compl.* [#22] at 10.  The Court will treat this as an Eighth Amendment claim regarding denial of access to medical care and Plaintiff's conditions of confinement.

This claim again fails to identify any Defendant who allegedly denied Plaintiff access to medication or should be held liable for Plaintiff's allegedly unconstitutional conditions of confinement.

### i.    Conditions of Confinement

With regard to this claim Plaintiff simply states that "CDOC officials abused their authority, and stepped beyond the scope of their capacity by finding him guilty of these warrant less [sic] accusations."[6]  *Third Am. Compl.* [#22] at 10.  Therefore, this claim is subject to dismissal for failure to meet the pleading requirements of Fed. R. Civ. P. 8. However, because Plaintiff also fails to state a viable Eighth Amendment claim the Court will briefly address the merits of this claim.

The Court applies a two-part test when evaluating conditions of confinement claims. "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.* "The objective component requires that the alleged deprivation be sufficiently serious," and "[t]he subjective component requires the jail official to have a sufficiently culpable state of mind." *Id.* (quotation omitted).

The Tenth Circuit has explained this standard as follows:

The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Although what constitutes cruel and unusual punishment under

---

[6]As noted above, Plaintiff believes that his confinement in administrative segregation is based on false accusations.  *Third Am. Compl.* [#22] at 9.

the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)), the Constitution "does not mandate comfortable prisons," *id.* at 349, 101 S.Ct. 2392.  To the contrary, jail conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney,* 143 F.3d at 1311 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392). Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321 (internal quotation marks and citation omitted); *accord Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The subjective component requires the jail official to have a "sufficiently culpable state of mind." *Id.* at 297, 111 S.Ct. 2321.  In the context of prison-conditions claims, the required state of mind is one of "'deliberate indifference'' to inmate health and safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson,* 501 U.S. at 302-03, 111 S.Ct. 2321).  In other words, the jailer is liable only if he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 111 S.Ct. 2321.  "It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998).

*Craig*, 164 F.3d at 495-96.  Regarding the subjective component, "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835.  This is essentially a question of whether the defendant was reckless by "disregard[ing] a risk of harm of which he [was] aware." *Id.* at 836-37.

Regarding the objective component, Plaintiff states that he "is of the opinion that the confinement was qualitatively different from the punishment normally suffered by a person convicted of a crime." *Third Am. Compl.* [#22] at 10.  Plaintiff's conclusory allegations regarding the conditions of administrative segregation do not rise to the level of a

39

constitutional violation.  *See Lewis v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 425 F.App'x 723, 727 (10th Cir. June 7, 2011) (finding that allegations that the plaintiff's jail "cell lacked daylight and adequate toilet privacy, that it was filthy and had to be sprayed regularly for bacteria, that the shower drain was clogged, that [the plaintiff] was allowed exercise only one or two times per week, and that the food was unappetizing" were "not optimal and understandably objectionable," but "do not rise to a constitutional violation.").  While prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm, see *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008), "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Therefore, in the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail."  *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994).  Prison conditions may be "'restrictive and even harsh'" without violating constitutional rights.  *Barney v. Pulsipher*, 143 F.3d 1229, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."  *Tafoya*, 516 F.3d 912, 916 (10th Cir. 2008).  Therefore, the Court concludes that Plaintiff's allegations regarding the conditions of administrative segregation, *Third Am. Compl.* [#22] at 10 ("he was subjected to twenty-three hour lock down, very restricted privileges, and stripped of the opportunity and access to the rehabilitative treatment he requires to make a change in life, and satisfy the requirements of his treatment plan"), do not allege that he was deprived of a basic human need.  Accordingly, the Court concludes that Plaintiff fails to state an Eighth Amendment claim.

### ii.    Denial of Medication/Treatment Programming

As part of Claim One Plaintiff briefly states that he was "denied access to his prescribed medication and Mental Health/Sex Offender treatment programming." *Third Am. Compl.* [#22] at 9.   Plaintiff fails to identify any Defendant who took any actions regarding this claim.   As noted above, Fed. R. Civ. P. 8 requires Plaintiff to identify his claims in a clear and concise manner.   Although Rule 8 does not require a plaintiff to plead "'detailed factual allegations,'" a pleading that asserts only "'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*   That is exactly what this claim is—a conclusion without any factual enhancement.   This statement does not "ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming*, 656 F.3d at 1215 (internal quotations and citations omitted).   This claim does not meet the pleading requirements of Fed. R .Civ. P. 8 and must be dismissed.

### d.    Fourteenth Amendment Claims

In Claim One, Plaintiff alleges that Defendant Englar, a mental health counselor at FCF, discussed sensitive information with CDOC officials without Plaintiff's consent. *Third Am. Compl.* [#22] at 8.   Plaintiff also alleges that Defendant Quattlebaum directed other CDOC employees to confiscate Plaintiff's mental health records and did not return them. *Id.*   The Court will treat these as Fourteenth Amendment due process claims against Defendants Englar and Quattlebaum.

41

### i.      Confiscation of Property

The Court first addresses Plaintiff's allegation that his records were confiscated.  It

is well established that "[t]he intentional deprivation of property is not a fourteenth

amendment violation if adequate state post-deprivation remedies are available." *Durre v.*

*Dempsey*, 869 F.2d 543, 547 (10th Cir.1989); *see Bridgeforth v. Ramsey*, 1999 WL

992978, *1 (10th Cir. Nov.2, 1999) ("Even if the seizure of a prisoner's property is improper,

an intentional deprivation of property does not give rise to a Fourteenth Amendment due

process claim if adequate state post-deprivation remedies are available.") (citing *Hudson*

*v. Palmer*, 468 U.S. 517, 533 (1984); *Smith v. Maschner*, 899 F.2d 940, 943 (10th Cir.

1990)); *Kartiganer v. Huerfano County, Colo.*, 2009 WL 440971, *1 (D. Colo. Feb.19,

2009).  Plaintiff here had adequate state remedies available to him to contest the alleged

property deprivations.  *See Durre*, 869 F.2d at 547; *Ali v. Reeves*, 222 F.App'x 777, 779

(10th Cir.2007) (affirming dismissal of pro se prisoner's claim regarding the removal of his

property because he did not comply with the Colorado Governmental Immunity Act nor did

he allege why he could not comply with the state claim procedure); *see also Boles v.*

*Newth*, 479 F.App'x 836, 841-42 (10th Cir. 2012); *Gee v. Pacheo*, 627 F.3d 1178, 1194

(10th Cir. 2010).  As the Court previously explained:

> An action in state court invoking the "willful and wanton" act exception to the
> Colorado Governmental Immunity Act pursuant to Colo. Rev. Stat. § 24-10-
> 118(2) is an adequate state post-deprivation remedy.  See  Ali v. Reeves,
> 232 F.App'x. 777, 779 (10th Cir. 2007). The Tenth Circuit requires a plaintiff
> to plead that these remedies are inadequate.  *Montana v. Hargett*, 84
> F.App'x. 15, 17 (10th Cir. 2003) (unpublished) (citing *Durre*, 869 F.2d at 548).
> If such a remedy exists, it has a "presumption of adequate due process" that
> "may stave off a facial attack."  *Freeman v. Dep't of Corrs.*, 949 F.2d 360,
> 362 (10th Cir. 1991).  In order to overcome this presumption of adequacy, the
> complaint must state "specific facts" showing that the remedy was
> "unresponsive or inadequate." Id. Plaintiff does not allege any facts in his

> Complaint about the adequacy of his state court remedy. Accordingly, the
> remedy for his claim asserting a random and intentional deprivation of
> property by sheriff deputies is pursuant to Colo.Rev.Stat. § 24–10–118, of the
> Colorado Governmental Immunity Act.

*Manzanares v. Law Firm of Aronowitz & Mecklenburg, LLP*, 2013 WL 6252715, at *6 (D.

Colo. Dec. 3, 2013).  Here, Plaintiff pleads no facts, much less specific facts, showing that

this state remedy is inadequate.  Therefore, Plaintiff's claim brought against Defendant

Quattlebaum relating to the confiscation of his medical records must be dismissed without

prejudice.  *See Vreeland v. Raemisch*, No. 12-cv-01921-PAB-KMT, 2013 WL 5462299, at

*2 (adopting recommendation that the plaintiff's confiscation of legal mail claim be

dismissed without prejudice); *see also Grove v. Delaney*, No. 12-cv-01539-BNB, 2012 WL

3131829, at *3 (D. Colo. July 31, 2012).

### ii.    Revelation of Information

Here, Plaintiff alleges that some of his mental health records were disclosed to

CDOC employees and that, as a result of a series of events, he was placed in

administrative segregation due to the revelation of this information. *Third Am. Compl.* [#22]

at 8-9.  Specifically, Plaintiff alleges that while in administrative segregation, he was

> subjected to twenty-three hour lock down, very restricted privileges, and
> stripped of the opportunity and access to the rehabilitative treatment he
> requires to make a change in life, and satisfy the requirements of his
> treatment plan.

*Id.* at 10.

To state a Fourteenth Amendment due process claim, a plaintiff must allege facts

supporting two elements.  *See Veile v. Martinson*, 258 F.3d 1180, 1184-1185 (10th Cir.

2001);  *Sarno*, 2013 WL 1151818, at *6-7;  *Obando v. Zavares*, 2012 WL 5878209, at *18

(D. Colo. Oct. 30, 2012).  First, he must allege that he possesses a protected liberty or

property interest.  *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7.

Second, he must allege that he was not afforded the appropriate level of process.  *See*

*Veile*, 258 F.3d at 1184-1185;  *Sarno*, 2013 WL 1151818, at *6-7.  Here, Defendants argue

that Plaintiff's Third Amended Complaint does not allege that he had a protected liberty or

property interest.  *Motion* [#37] at 11.  Defendants further argue that even if Plaintiff did

allege such an interest, he fails to plead that the "alleged deprivation affected the duration

of confinement or imposed an atypical and significant hardship."  *Id.*

The Court need not decide if Plaintiff has a constitutional right to keep his mental

health records from being revealed to CDOC employees because Plaintiff fails to plead

facts sufficient to meet the second prong—that he was not afforded the appropriate level

of process.  "The Supreme Court has indicated that adequate inmate grievance procedures

alone may provide a meaningful postdeprivation remedy for purposes of procedural due

process."  *Klein v. McClaury,*221 F.3d 1352, at *2 (10th Cir. July 20, 2000) (unpublished

table decision) (citing *Hudson*, 468 U.S. at 536 n.15).  Here, Plaintiff states in the Third

Amended Complaint that "[f]ollowing the discovery of Ms. Englar's conduct, Plaintiff filed

a grievance seeking relief on 8-31-12."  *Third Am. Compl* [#22] at 9.  Plaintiff's "own

pleading acknowledges that he has what the courts have determined to be an adequate

post-deprivation remedy available to him through the prison grievance system."  *Tena v.*

*Linza*, No. 12-cv-03215-MSK-CBS, 2014 WL 1154183, at *6 (D. Colo. Mar. 13, 2014).

While Plaintiff does not plead facts regarding the outcome of the grievance procedure,[7] the

_____

[7] According to Plaintiff, his later placement in administrative segregation was a result of
Defendant Englar's filing of a "fabricated" sexual harassment claim against Plaintiff.  *Third Am.
Compl.* [#22] at 9.  The Court addressed Plaintiff's First Amendment retaliation claim against
Defendant Englar supra in Section IV(B)(3)(a)(i) and addressed Plaintiff's conditions of confinement

outcome "in no way affects the procedure's adequacy as a post-deprivation remedy." *Austin v. Lehman*, 893 F.Supp. 448, 454 n.4 (E.D. Pa. 1995) (citing *Jackson v. Central New Mexico Corr. Facility*, 976 F.2d 740, (10th Cir. 1992) (unpublished table decision) ("The fact that Plaintiff did not receive the result he desired from the [prison] grievance procedure does not mean that he was denied due process.") and *Abbott v. Jackson*, No. 86 Civ. 7225, 1988 WL 26993, at *1 (E.D. Pa. Mar. 16, 1988) (prison authorities' unfavorable decision on inmate's grievance is not itself a denial of due process)); *Morales v. Beard*, Civ. A. No. 09-162, 2009 WL 2413425 (W.D. Pa. July 31, 2009) ("failure of prison officials to provide what the inmate deems to be a favorable response to a grievance does not demonstrate that the process was inadequate or constitutionally deficient."). Accordingly, Plaintiff's Fourteenth Amendment due process claim against Defendant Englar regarding her alleged revelation of personal information fails as a matter of law.

### e.    Privacy Claim Against Defendant Malebranche

In Claim Four Plaintiff alleges that Defendant Malebranche, "while in the [c]ontrol [t]ower . . . inflicted a humiliating and [e]mbarassing search as Plaintiff took a shower." *Id.* at 15. Plaintiff further maintains that she "purposefully wrote another [i]ncident [r]eport of [s]exual [h]arassment, as Plaintiff used the toilet in his cell." *Id.*

Prisoners do not give up their constitutional rights simply because they are incarcerated, however, "'[l]oss of freedom of choice and privacy are inherent incidents of confinement.'" *Hudson*, 468 U.S. at 527-28 (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)) (modification in *Hudson*). As the Supreme Court explained in *Hudson*,

claim *supra* in section IV(B)(3)(c)(I). Therefore, the Court does not address those issues here.

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.  We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.  We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.'

*Id.* at 527-28 (quoting *Bell*, 441 U.S. at 537) (footnote omitted).  However, "[a]n inmate's limited right to privacy may be violated where prison officials regularly watch inmates of the opposite sex shower."  *Klein v. Pyle*, 767 F.Supp. 215, 218 (D. Colo. 1991) (citing *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam)).  Here, Plaintiff simply alleges that a female guard viewed him showering once and using the toilet once.  This does not constitute a constitutional violation.  *See Thompson v. Wyandotte Cnty. Detention*, 869 F. Supp. 893, 895 (D. Kan. 1994) (finding that female inmate's "limited rights to privacy were not violated by the irregular and isolated occasions in which she was allegedly viewed in the nude." (emphasis omitted)); *Somers v. Thurman*, 109 F.3d 614, 621-22 (9th Cir. 1997) (observation of nude male inmates by female guards did not violate the Constitution); *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995) (use of female officers to guard naked detainee upheld because the policy was not imposed for punitive reasons or for the purpose of embarrassment, and served a legitimate purpose of equal employment opportunities for women).  Accordingly, to the extent Plaintiff states a privacy claim against Defendant Malebranche, such claim fails as a matter of law.

### f.    Defendant Soares

In Claim Three Plaintiff alleges that Defendant Soares, the Assistant Warden at CSP, "failed to address the conduct of her [o]fficers, thereby failing in the execution of her duty."  *Third Am. Compl.* [#22] at 14.  To state a claim in federal court, a complaint must

46

explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated. *Nasious*, 492 F.3d at 1163. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1250.

Additionally, Plaintiff may not seek to impose liability on a defendant merely because that individual is in a supervisory position. An individual cannot be held liable under § 1983 unless he caused or participated in an alleged constitutional violation. *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of § 1983 liability. *Id.* In order to hold a supervisor liable under § 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted). Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. *Id.* at 1163.

Here, Plaintiff offers no factual allegations against Defendant Soares except that she allegedly failed to address the conduct of those Defendants reporting to her. *Third Am. Compl.* [#22] at 14. This is insufficient to state a claim against this Defendant.

47

### g.    Defendant Scollard

In Claim One Plaintiff briefly mentions Defendant Scollard as Defendant Englar's supervisor. Specifically, he states: "After the filing of said grievance, Plaintiff became targeted and was subjected to [a]rbitrary, [o]ppressive, and [r]etaliatory measures conducted by Ms. Englar, her [s]upervisor Ms. Jerri Scollard, and additional CDOC [o]fficials." *Third Am. Compl.* [#22] at 9 (emphasis omitted). In Claim Two Plaintiff further states:

> Therapist, Stephanie Englar (CDOC Employee at FCF) initiated the events after Plaintiff filed a grievance against her for violating the confidentiality clause of his treatment contract, without consent and legitimate [p]enological reasoning by revealing sensitive material to [u]nqualified CDOC [o]fficials after receiving permission from (Acting Supervisor) Jerri Scollard."

*Id.* at 11.

> As the Court previously explained to Plaintiff

> Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Mr. Banks must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A supervisory official[ ] may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). . . . Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

*Order Directing Plaintiff to File Second Amended Complaint* [#8] at 5-6.

Plaintiff's conclusory statement in Claim One that he "was subjected to [a]rbitrary,

48

[o]ppressive, and [r]etaliatory measures conducted by Ms. Englar, her [s]upervisor Ms. Jerri Scollard, and additional CDOC [o]fficials," *Third Am. Compl.* [#22] at 9 (emphasis omitted), does not meet Fed. R. Civ. P. 8's pleading requirements.  Further, even taking Plaintiff's allegations regarding Defendant Scollard in Claims One and Two together, Plaintiff's basis for naming Defendant Scollard as a Defendant is her role as a supervisor of Defendant Englar.  Plaintiff does not allege that Defendant Scollard promulgated a policy that caused a constitutional violation and acted with a state of mind required to establish a constitutional deprivation.  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).  Accordingly, Plaintiff fails to state a claim against this Defendant.

### h.   Defendant Arguello

Defendant Arguello is mentioned only in the caption and in the portion of the Third Amended Complaint in which Plaintiff lists the parties.  *Third Am. Compl.* [#22] at 1, 4. Plaintiff states that Defendant Arguello is the CSP mail room supervisor.  *Id.* at 1, 4. Plaintiff offers no factual allegations about any actions taken by this Defendant relating to any alleged violation of Plaintiff's constitutional rights.  As discussed above, Plaintiff offers general allegations about the "CSP [m]ail room staff" in Claim Three.  *Id.* at 13.  However, this is insufficient to state a claim against Defendant Arguello.  *See* Fed. R. Civ. P. 8; *Dodds*, 614 F.3d at 1199.

Accordingly, the Court concludes that Plaintiff fails to state any facts sufficient to establish that any Defendant violated his constitutional rights.  Therefore, it is unnecessary for the Court to determine whether Defendants are entitled to qualified immunity with regard to these claims.  *See Hawker v. Sandy City Corp.*, --- F.App'x ---, 2014 WL 6844928, at *2 n.5 (10th Cir. 2014) (unpublished decision) ("Technically, qualified immunity does not come

into play if there has been no constitutional or statutory violation.  It provides immunity to public officials who violate established rights but are reasonably unaware of a problem because the right was not clearly established when the violation occurred.").[8]  Because Plaintiff fails to state claims against Defendants in their individual capacities, such claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### 4.    Punitive Damages

In addition, to the extent that Plaintiff requests punitive damages, he must claim that Defendants acted with an evil intent or with reckless indifference.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  However, because the Court concludes that Plaintiff fails to adequately allege any claims against Defendants, it need not determine if Plaintiff's request for punitive damages is adequately plead.

### V.  Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#37] is **GRANTED** and Plaintiff's claims

---

[8]  This Court has previously held that when a plaintiff does not sufficiently allege a constitutional violation, the defendant is entitled to qualified immunity because the plaintiff has not met the first prong of the test.  *See, e.g., Haskett v. Flanders*, No. 13-cv-03392-RBJ-KLM, 2015 WL 128156, at *5 (D. Colo. Jan. 8, 2015); *see also Burgin v. Leach*, 529 F.App'x 882, 885 (10th Cir. 2013) (unpublished decision) ("Without a constitutional violation by Deputy Leach, Sheriff Waters is immune from suit on the Burgins' supervisory-liability theory."); *Lewis v. Sandoval*, 428 F.App'x 808, 811 (10th Cir. 2011) (unpublished decision) ("Accordingly, there was no constitutional violation, and Sandoval was entitled to qualified immunity on all claims except that alleging excessive force."). However, the approach used herein and discussed in *Hawker* seems to be a more logical approach given the purpose of qualified immunity and the fact that the analysis conducted under the first prong of the qualified immunity test is identical to the analysis the Court engages in pursuant to Fed. R. Civ. P. 12(b)(6) when examining constitutional claims.  Further, because a Rule 12(b)(6) analysis that concludes that a claim is not stated extinguishes all requests for relief based on that claim and qualified immunity only protects against claims for money damages, it is more efficient for the Court to dismiss Plaintiff's constitutional claims for failure to state a claim because such a conclusion extinguishes the claims for money damages, declaratory relief, and injunctive relief simultaneously.

are dismissed as follows:

Plaintiff's official capacity claims against Defendants for monetary relief are **DISMISSED with prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.

Plaintiff's claims for compensatory damages are **DISMISSED with prejudice** pursuant to 42 U.S.C. § 1997e(e).

Plaintiff's individual capacity claims brought under the First Amendment against Defendants Englar, Katzenmeyer, Crosley, and Malebranche and for denial of access to the courts; his Eighth Amendment claim relating to his conditions of confinement; his individual capacity Fourteenth Amendment claims against Defendants Quattlebaum and Englar; and his individual capacity privacy claim against Defendant Malebranche are **DISMISSED without prejudice**[9] pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's claims against Defendants Soares, Scollard, and Arguello; his claim relating to the correspondence course; and his Eighth Amendment denial of medication/treatment programming are **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 8.

---

[9]   The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial. *Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *accord Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *see also Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice) (unpublished table decision).  However, due to heightened concerns when the plaintiff is proceeding pro se, "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice." *Gee*, 627 F.3d at 1186.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall close this case.

Dated:  March 4, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge